# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MARK POPOWSKI, et al., :
:
        Plaintiffs, :
:
  v. : CIVIL ACTION NO.
: 1:04-CV-0889-JOF
DEBORAH PARROTT, :
:
        Defendant. :

## OPINION AND ORDER

This matter is before the court on the court's order of October 31, 2007; Plaintiffs' motion to add Marvin Parrott as party defendant [45]; Plaintiffs' motion to add Amici Mutual Insurance Company as party defendant [46]; Plaintiffs' motion for sanctions [47]; Plaintiffs' motion for summary judgment [48]; and Plaintiffs' motion to supplement motion for summary judgment [50].

## I.  Background

### A.  Procedural History

On March 31, 2004, Plaintiffs, Mark Popowski, as fiduciary of the United Distributors, Inc. Employee Health Benefit Plan, and The Commerce Group, the Third-Party Administrator of the United Distributors, Inc. Employee Health Benefit Plan, filed suit against Defendant, Deborah Parrott, under the Employee Retirement Income Security Act

of 1974, § 502(a)(3), codified at 29 U.S.C. § 1132(a)(3). Plaintiffs sought reimbursement and/or restitution whether through constructive trust, equitable lien, or any other such appropriate equitable mechanism over the identifiable assets of a personal injury settlement reached by Defendant with a third party. Plaintiffs further sought attorney's fees pursuant to 29 U.S.C. § 1132(g). The suit is essentially a subrogation action by a health plan for reimbursement of medical expenses it paid on behalf of Defendant who later received a $500,000 settlement in an underlying tort action.

In an order dated December 23, 2004, this court granted Defendant's motion to dismiss finding that the action could not be brought under § 502(a)(3), relying on the Supreme Court's opinion in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). The United States Court of Appeals for the Eleventh Circuit reversed this court's decision in *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006), relying on newer authority from the United States Supreme Court. *See Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).

After remand from the Eleventh Circuit, the court granted Defendant's counsel's motion to withdraw, and Defendant informed the court that she intended to proceed *pro se*. On June 11, 2007, Plaintiffs filed a motion to compel stating that they sent interrogatories and requests for production to Defendant on March 30, 2007, and there had been no response to them. Plaintiffs also sent a letter to Defendant in an attempt to resolve the

discovery dispute. Defendant did not respond to that letter and did not respond to Plaintiffs' motion to compel. In an order dated October 31, 2007, the court directed Defendant to respond to the discovery requests within thirty days. According to Plaintiffs, Defendant did file a response within that time frame but did not provide complete responses. Thereafter, Plaintiffs filed the instant motions to add certain parties and for summary judgment as to a particular structured settlement fund.

### B. Legal Landscape

To adjudicate the discovery issues and dispositive motions presently before the court, a review of the Eleventh Circuit's decision in this case and more recent authority from the Eleventh Circuit is necessary. In *Popowski*, the court considered two separate cases where a plan was attempting to obtain reimbursement of medical expenses through a subrogation clause. The court recognized that in *Sereboff*, the Supreme Court construed § 502(a)(3) "to authorize only 'those categories of relief that were typically available in equity.'" 126 S. Ct. at 1873 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 256-57 (1993)). A "claim that seeks 'nothing other than compensatory damages' for example, one that seeks simply 'to impose personal liability . . . for a contractual obligation to pay money' is not equitable for the purposes of § [502(a)(3)]." *See Parrott*, 461 F.3d at 1372. The "Supreme Court further clarified that, as long as a plaintiff is able to establish that 'the basis for its claims is equitable,' bringing the claim as an action for breach of contract will not disqualify it under"

3

§ 502(a)(3). *Id.* "In other words, a claim that 'alleges breach of contract and seeks money' but 'seeks recovery through a constructive trust or equitable lien on a specifically identified fund' in the defendant's possession and control is equitable relief" for the purposes of § 502(a)(3). *Id.* at 1373.

> With respect to the particular plan at issue here, the court then stated:
>
> The subrogation and reimbursement provision in the United Distributors Plan creates a lien "on any amount recovered by the Covered Person whether or not designated as payment for medical expenses." It further clarifies that "[t]he Covered Person . . . must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer." Thus, language essentially identical to the Supreme Court's characterization of the plan language in *Sereboff*, specifies both the fund (recovery from the third party or insurer) out of which reimbursement is due to the plan and the portion due the plan (benefits paid by the plan on behalf of the defendant). Unlike in *Knudson*, a significant portion of the funds specified went directly into the Parrotts' bank account and, thereby, was in their possession for purposes of this case. Thus, at the time they filed their suit, Popowski and the Commerce Group sought "not to impose personal liability on [Parrott], but to restore to the plaintiff[s] particular funds or property in [Parrott's] possession."

*Id.* at 1373 (holding that plaintiffs have stated a claim for "appropriate equitable relief" under § 502(a)(3)). In contrast, the plan in the companion case did not specify that reimbursement be made out of any particular fund and did not limit recovery to a portion of an identifiable fund. *Id.* at 1374. The court further noted that in *Sereboff*, the Supreme Court "clarified that the strict tracing requirements that apply to equitable liens 'sought as a matter of restitution' do not apply to equitable liens by agreement." *Id.* at 1374 n.8 (citation omitted). "Neither, in the case of a lien by agreement is it necessary for a plaintiff

4

to trace property or an asset rightfully belonging to that plaintiff 'into its products or substitutes' in the defendant's hands." *Id.*

The court also finds *Administrative Committee for the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008), to be instructive. *Horton* involved a subrogation action in a tort case similar to the instant matter. However, in *Horton*, the injured party was a minor whose mother worked for Wal-Mart and insured her son through her policy there. The settlement proceeds from the tort action were deposited into a fund in the Hall County Probate Court account. The probate court appointed the minor's mother as his conservator. In this capacity, the mother took possession of the settlement monies and deposited them into a trust account at a bank. When the plan requested reimbursement for the money it paid out in medical expenses on behalf of the minor, the mother refused. The plan then filed suit against the minor and his mother individually and in her role as conservator.

In considering the parties' claims, the court reviewed *Mertens*, *Knudson*, and *Sereboff*. The court explained that the key distinction between *Knudson* and *Sereboff* was "whether the beneficiary-defendant possessed the disputed funds." *Id.* at 1227. The court noted, however, that "[n]either case . . . addressed whether a benefit plan could use § 502(a)(3) to recover a specifically identified fund in the possession of a third party, such as a trustee or conservator, by suing the third party directly." *Id.*

5

To reach an answer on this question, the court first looked to *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 249-50 (2000), where the Supreme Court rejected an argument that § 502(a)(3) afforded relief only against a "wrongdoer" who violates the terms of an ERISA plan and not against "innocent" third parties. *Id.* at 1227-28. The *Harris Trust* Court premised its conclusions as a reading of the common law of trusts. *Id.*

Applying this to the set of facts before the court, the court reasoned that the Plan sought "equitable restitution of a specifically identifiable fund in possession of a defendant." *Id.* at 1228. The fact that the mother held the funds in her capacity as conservator, the court held, did not defeat the Plan's claims. *Id.* at 1228-29.

> Under *Knudson*, *Sereboff*, and the other authorities cited above, the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable *res* that can be restored to its rightful recipient. Had the Administrative Committee solely sued parties not in possession of the disputed funds, the claim would have failed under *Knudson* because it merely would have sought to impose personal liability on those parties. Instead, the Administrative Committee also sued Ms. Werber in her capacity as conservator of Joshua's special needs trust, seeking restoration of that particular fund in which it asserts a paramount interest.

*Id.* at 1229.

AO 72A
(Rev.8/82)

### C. Facts Before the Court

Returning to the facts of this case, the Plan under which Defendant is a Covered Person contains a subrogation and reimbursement provision which stated:

> in any event, the Plan has a lien on any amount recovered by the Covered Person whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.
> The Covered Person . . . must repay to the Plan the benefits paid in his or her behalf out of the recovery made from the third party or insurer.

*See Popowski*, 461 F.3d at 1370. The Plan further provides that these "rights provide the Plan with a priority over *any* funds paid by a third party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney's fees, or other costs and expenses." *Id.* Prior to the Plan making any payment for medical expenses on behalf of Defendant, Defendant signed a reimbursement agreement stating that she understood the plan,

> has a claim or lien against, and the first right to receive reimbursement from the Participant for, any recovery, settlement, or judgment obtained by Participant from or against any party at fault in the [accident at issue] or from any other source for the amount paid by the Plan as medical claims.

*Id.*

Defendant received $500,000 in settlement for her injuries from her under-insured motorist's insurance carrier. At the time of the settlement, Defendant had incurred $234,557.50 in medical expenses and lost wages of $9,061.54. Out of the settlement, $175,000 was paid to her attorney, $125,000 was placed in a structured annuity to the

7

benefit of Defendant, and the remaining $200,000 was paid to Defendant and placed in a joint checking account with her husband.

Defendant also received $25,000 from the tortfeasor's insurance company. Some of that money went directly to medical expenses and attorney's fees with a remainder of $2,374.64 going to Defendant and her husband.

The Plan has paid out $152,889.65 in medical expenses on behalf of Defendant. The Plan requested reimbursement from Defendant and Defendant refused. The Plan then filed this action. Through discovery, Plaintiffs have learned that out of a portion of the settlement proceeds, Defendant purchased a structured settlement from Amica Mutual Insurance Company at a cost of $125,000. The structure requires payments to Defendant over a period of twenty years.

### D. Contentions

In their motion for summary judgment, Plaintiffs ask the court to rule that the structured settlement purchased from Amica is an asset subject to the lien/subrogation claim and Plaintiffs are entitled to set the structure aside to themselves toward satisfaction of Plaintiffs' claims. In conjunction with this request, Plaintiffs move to add Amica Mutual Insurance Company and Marvin Parrott, a beneficiary under the structure, as Defendants to the instant litigation. Finally, Plaintiffs ask the court to sanction Defendant in the form of striking her answer for failure to answer discovery requests.

8

Defendant has previously argued to the court that her case is different than *Sereboff* because the funds she received in settlement of her personal injury lawsuit were not placed into a separate account. Defendant also stated that she disagreed with the Supreme Court's ruling in *Sereboff*, and it would be a hardship for her to be required to pay the approximately $154,000 sought.

In her more recent responses, Defendant contends that Marvin Parrott should not be added as a party defendant because he is not an employee of United Distributors and is not subject to the subrogation clause. Defendant filed no response in opposition to Plaintiffs' motion to add Amica Mutual Insurance Company. Defendant further argues that she should not be sanctioned because the court's prior order directed her only to provide information to Plaintiffs as to the settlement monies and not as to her personal finances. She complains that Plaintiffs have subpoenaed bank records and warranty deeds in violation of her rights. Finally, in response to Plaintiffs' motion for summary judgment as to the Amica structured settlement, Defendant argues that Plaintiffs cannot recover on the structured settlement because it is a medical annuity and under bankruptcy law that annuity is protected. She further avers that the structured settlement is worth more than Plaintiffs' claim and that summary judgment is unconstitutional under the Seventh Amendment.

9

## II. Discussion

### A. Motions to Add Parties

As an initial matter, the court finds that Plaintiffs' motions to add Marvin Parrott and Amica Mutual Insurance Company are well taken. In *Horton*, the Eleventh Circuit made clear that a Plan is entitled to seek a specified fund from third parties whether they are "wrongdoers" or are "innocent" possessors of the fund. Amica, clearly, is in possession of an identifiable fund into which Defendant placed proceeds from her tort settlement that are subject to the Plan's lien. The Settlement Agreement provides that Deborah Parrott is the initial annuitant and Marvin Parrott is the primary beneficiary.

Further, the settlement agreement reached with Amica, as the insurer for the uninsured motorist claim, was made with both Deborah and Marvin Parrott and provides that payment is made to both individuals. Although it is not clear the extent to which proceeds of the settlement have been transferred to Marvin Parrott, he is listed as a beneficiary on the Amica structured settlement, and in that role alone, Plaintiffs can bring him into this action.

Therefore, the court GRANTS Plaintiffs' motion to add Marvin Parrott as party defendant [45-1] and GRANTS Plaintiffs' motion to add Amici Mutual Insurance Company as party defendant [46-1]. Plaintiffs are DIRECTED to serve a complaint on these Defendants within thirty (30) days from the date of this order. Plaintiffs are also DIRECTED to serve these Defendants with this order.

AO 72A
(Rev.8/82)

### B.      Motion for Summary Judgment on Amica Structured Settlement

The law of the case set down in *Parrott* precludes Defendant's argument that her case is different than *Sereboff*. Further, the court finds Defendant's assertion that the summary judgment procedure is unconstitutional without merit. *See*, *e.g.*, *Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186 (11th Cir. 2004). Moreover, as this is not a bankruptcy proceeding, the court need not consider what restrictions bankruptcy law would apply to a structured settlement.

> As the court described above, the law of the case, here, establishes that the,
>
> subrogation and reimbursement provision in the United Distributors Plan creates a lien "on any amount recovered by the Covered Person whether or not designated as payment for medical expenses." It further clarifies that "[t]he Covered Person . . . must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer." Thus, language essentially identical to the Supreme Court's characterization of the plan language in *Sereboff*, specifies both the fund (recovery from the third party or insurer) out of which reimbursement is due to the plan and the portion due the plan (benefits paid by the plan on behalf of the defendant).

461 F.3d at 1373.

The court finds that through their statement of material facts, Plaintiffs have established that the Amica Structure Settlement is a specified fund that was purchased with the proceeds of the money Defendant received in settlement of her tort claims. Under the undisputed and unambiguous terms of the Plan, Plaintiffs are entitled to that property. When Amica is brought before the court, the court can make further instructions as to the

11

disposition of that property. The court GRANTS Plaintiffs' motion for summary judgment [50-1].

### C.     Motion for Sanctions

On October 31, 2007, the court issued an order granting Plaintiffs' motion to compel. In the course of ruling on Plaintiffs' motion, the court indicated that the discovery requests propounded by Plaintiffs were "limited in scope essentially to what settlement money Defendant received and where that money is now. These issues are relevant to the court's consideration of the claim as described in *Sereboff*." *See* Order, at 3. The court then directed Defendant to respond to Plaintiffs' discovery requests within thirty days or face possible sanction. *Id.* Nothing in the court's order limited the manner in which Defendant was to respond to Plaintiffs' discovery requests. The court found the requests to be reasonable and directed Defendant to respond.

Defendant did not respond to Plaintiffs' Request for Admissions. She did indicate that she

> couldn't remember everything that was purchased with the settlement money, towels, and toys for the children, Christmas presents for family, etc. But we bought these things before the settlement and we continue to buy them today after the settlement money was done. My husband and I both work and make money. The settlement money was never separate from our regular funds.

12

*See* Defendant's "Response to Admissions of Fact," ¶ 9. Defendant also did not respond to Plaintiffs' Request for Documents, but for the submission of the Settlement Agreement she signed with Amica Mutual Insurance Company.

Based on the answers that Defendant did provide, Plaintiffs assert in their motion to sanction that beyond the Amica settlement structure, "it evidently is defendant's position that the settlement monies have been spent with no tangible asset remaining." *See* Motion, at 6. Plaintiffs further aver that based on Defendant's responses to the discovery requests, she received $525,000 in settlement of which $125,000 was used to purchase the settlement structure. Defendant lists various expenditures for the remaining $400,000, including attorney's fees, vacations, car purchases and others. However, the listing provided by Defendant accounts for only $353,430 of the remaining $400,000, and Defendant has not provided any documentation for the expenditures listed.

Plaintiffs argue they "suspect that defendant has used settlement monies in the purchase of two houses since her settlement (evidently the first house was sold in conjunction with the purchase of the second house). Defendant has not provided the requested documentation that would help determine whether plaintiffs' suspicion is accurate." *See* Motion for Sanction, ¶ 12.

In response to Plaintiffs' motion for sanction, Defendant asserts that she should not have to answer questions about her "personal finances" and that any information about her

13

house purchases goes beyond what the court provided for in its order granting the motion to compel. Defendant claims that she cannot produce any more documents because it "would take months to get copies of where every dime of the money was spent." *See* Response, at ¶ 10(1). She also avers that the settlement "money has been spent." *Id.*, ¶ 10(3). Finally, Defendant claims that she purchased one home in May 2001. The second home was purchased in August 2005 with a loan from her husband's 401K. *Id.*, ¶ 12.

The court does not agree that a sanction of striking Defendant's answer is appropriate at this time. Defendant has at least attempted to answer the discovery requests. To the extent that she has not answered the requests for admission, the court deems those admitted by Defendant pursuant to Federal Rule of Civil Procedure 36. Defendant has proffered to the court that she has answered the interrogatories to the fullest of her abilities and cannot remember every item upon which the settlement money was spent. Based on this representation by Defendant, the court will not grant Plaintiffs' motion for sanctions. Should it turn out at some point in the litigation that Defendant's representation is false, that would become an entirely separate matter altogether.

Sereboff clearly sets forth that Plaintiffs' action is equitable in nature. *Sereboff* did discuss the fact that equity's traditional "strict tracing rules" did not necessarily apply so that a constructive trust could be placed over a fund which was not yet in existence when a lien provision was executed. *Sereboff*, however, did not discuss how a constructive trust should

14

be imposed over a fund that may have been dissipated since its identification, as is alleged here. The Court held in *Knudson* that imposition of a constructive trust was not appropriate "where the property [sought to be recovered] or its proceeds have been dissipated so that no product remains. . . . The plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]. *See* 534 U.S. at 213-14 (quotation and citation omitted). That is because "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214. Based on this reading, several district courts have determined that a constructive trust may not be imposed over the assets of a fund which have been dissipated. *See*, *e.g.*, *UNUM Life Ins. Co. v. Wolf*, 2008 WL 2185889 (D. Colo. May 23, 2008); *Security Mutual Life Ins. Co. v. Joseph*, 2007 WL 1944345 (E.D. Pa. July 2, 2007); *UnitedHealth Group, Inc. v. Dowdy*, 2007 WL 3203473 (M.D. Fla. Oct. 29, 2007).

It appears to the court that the only tangible assets Defendant may have remaining from the settlement fund are a 2004 Jeep Cherokee, a couch, a chair, and her home purchased in August 2005. Defendant has admitted that the Jeep and the furniture were purchased with the proceeds of the settlement. The parties dispute the origin of the financing of the August 2005 home. Plaintiffs contend it was funded through the settlement; Defendant avers that it was purchased with a loan through her husband's 401K. At this

15

point, it is not clear the extent to which the court will need to delve into the issue of the August 2005 home. The court has held above that Plaintiffs are entitled to possession of the Amica structured settlement fund. That fund was purchased with $125,000 of the settlement proceeds, but the court has no information as to the value of the fund and whether the Amica fund can satisfy the $152,889.65 the Plan paid out in medical expenses.

For these reasons, the court DIRECTS Plaintiffs within twenty (20) days to file any remaining dispositive motion as to what money they contend they are owed (after the transfer of the structured settlement) and from where they contend that money is to be sought. Plaintiffs may also assert in that motion that they require additional discovery on the financing of the August 2005 home and propose in what form that discovery would be.

### III. Conclusion

The court GRANTS Plaintiffs' motion to add Marvin Parrott as party defendant [45]; GRANTS Plaintiffs' motion to add Amici Mutual Insurance Company as party defendant [46]; DENIES Plaintiffs' motion for sanctions [47]; GRANTS Plaintiffs' motion for summary judgment [48] and GRANTS Plaintiffs' motion to supplement motion for summary judgment [50].

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this 19th day of September 2008.

                                                                                          s/ J. Owen Forrester  
                                                                 J. OWEN FORRESTER  
                               SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)